# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUCISBEL CRUZ-BERMUDEZ, and HELMUT BECKER, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 2:24-cv-00387-BMC |
| v. | Judge Brian M. Cogan |
| HENRY SCHEIN, INC., | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................................... 1

II.     THE SETTLEMENT ................................................................................................ 2

III.    BACKGROUND ....................................................................................................... 4

    1.  Defendants' Data Breach and Plaintiffs' Claims................................................ 4

    2.  Procedural History ............................................................................................... 5

    3.  Arms'-length Negotiations & Preliminary Approval.......................................... 6

    4.  Notice Program & Claims Activity...................................................................... 7

IV.     ARGUMENT ............................................................................................................ 7

    1.  The Court Should Approve the Settlement Under Rule 23 and the *Grinnell* Factors......... 8

        A.  Plaintiffs and counsel represented the class "adequately" ............................. 9

        B.  The Settlement was negotiated at arms' length.............................................. 11

        C.  The Settlement's relief is "adequate" considering this case's complexity and risks and the relief this settlement achieves ................................................................. 12

        D.  The Settlement treats class members equitably and is within the "range of reasonableness"............................................................................................... 15

        E.  The class's reaction to the settlement............................................................. 15

    2.  The Court Should Certify the Settlement Class for Settlement Purposes......................... 16

    3.  The Court Should Find the Notice Program Satisfied Rule Due Process........................ 17

V.      CONCLUSION......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997)..................................................................................... 17

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
 222 F.3d 52 (2d Cir. 2000) ........................................................................... 9

*Beckman v. KeyBank, N.A.*,
 293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................. 14

*Brady v. Due N. Holdings, LLC*,
 No. 17-cv-1313 (S.D. Ind. Oct. 16, 2018) ................................................... 14

*Castagna v. Madison Square Garden, L.P.*,
 No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614 (S.D.N.Y.
 June 7, 2011) ................................................................................................. 11

*Chang v. Philips Bryant Park LLC*,
 No. 17 Civ. 8816 (LTS) (SLC), 2019 U.S. Dist. LEXIS 185297, 2019 WL 8105999 (S.D.N.Y.
 Oct. 23, 2019) ................................................................................................. 8

*Cohen v. J.P. Morgan Chase & Co.*,
 262 F.R.D. 153 (E.D.N.Y 2009) ............................................................... 7, 8

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
 502 F.3d 91 (2d Cir. 2007)............................................................................ 9

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2007) .......................................................................... 11

*Desue v. 20/20 Eye Care Network, Inc.*,
 No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355 (S.D. Fla. July 8, 2023) ........... 8, 12

*Dornberger v. Metropolitan Life Ins.*,
 203 F.R.D. 118 (S.D.N.Y. 2001) ................................................................. 14

*Fulton-Green v. Accolade, Inc.*,
 2019 U.S. Dist. LEXIS 164375 (E.D. Pa. Sep. 23, 2019) ....................................... 12

*Hammond v. The Bank of N.Y. Mellon Corp., No. 08 Civ. 6060 (RMB)(RLE)*,
 2010 WL 2643307 (S.D.N.Y. June 25, 2010) .............................................. 13

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
 909 F. Supp. 2d 259 (S.D.N.Y. 2012) .......................................................... 16

*In re Canon United States Data Breach Litig.*,
   No. 20-CV-6239-AMD-SJB, 2023 U.S. Dist. LEXIS 206513 (E.D.N.Y. Nov. 15, 2023) ....... 14

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200 (W.D. Ky. Aug. 23,
   2010) ................................................................................................................................. 8, 12

*In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd*,
   *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010 ........................................... 10

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd, Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d
   Cir. 2010) ................................................................................................................................. 10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ..................................................................................................... 13

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
   No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805 (S.D.N.Y. June 8, 2022) ............. 9, 14

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. June 10, 2009) ...................................................................................... 8

*In re Interpublic Sec. Litig.*,
   No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............................................. 11

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577 (S.D.N.Y. Nov. 26,
   2002) .......................................................................................................................................... 14

*In re Luxottica Group S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) .................................................................................................. 7

*In re Nano-X Sec. Litig.*,
   No. 21-CV-5517 (RPK) (PK), 2024 U.S. Dist. LEXIS 71340 (E.D.N.Y. Apr. 17, 2024) ........ 15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................................................ 15

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573 (N.D. Ohio Aug. 12, 2019) .................... 12

*In re Telik*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................................................ 14

*In re TJX Cos. Retail Sec. Breach Litig.*,
   246 F.R.D. 389 (D. Mass. 2007) ................................................................................................ 13

*Maley v. Del Glob. Techs. Corp.,*
 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................... 15

*Reynolds v. Marymount Manhattan Coll.*,
 No. 1:22-CV-06846-LGS, 2023 U.S. Dist. LEXIS 191993 (S.D.N.Y. Oct. 23, 2023)............. 15

*Sewell v. Bovis Lend Lease LMB, Inc.*,
 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) ......................................... 14

*Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331-CM-MHD, 2014 WL 1224666 (S.D.N.Y.
 Mar. 24, 2014) ....................................................................................................... 10

*Soler v. Fresh Direct, LLC*,
 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023 ....................................... 8, 9

*Stollenwerk v. TriWest Healthcare All.*,
 No. CV–03–0185–PHX–SRB (D. Ariz. June 10, 2008)........................................... 13

*Torretto v. Donnelley Fin. Sols., Inc.*,
 No. 1:20-cv-02667-GHW, 2023 U.S. Dist. LEXIS 5440 (S.D.N.Y. Jan. 5, 2023) .................. 15

*Warren v. Xerox Corp.*,
 No. 01-CV-2909 (JG), 2008 U.S. Dist. LEXIS 73951 (E.D.N.Y. Sep. 19, 2008) .................. 13

*Willix v. Healthfirst, Inc.*,
 No. 07–cv–1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .................................. 11

**Rules**

Federal Rules of Civil Procedure, Rule 23 ................................................. i, 1, 2, 4, 7, 8, 9, 10, 15

## I.    **INTRODUCTION**

The Court should approve the parties' settlement under Rule 23. The Court preliminarily approved the settlement as "fair, reasonable, and adequate" on September 16, 2024. Dkt. 30 at 3. Notice has been disseminated to, and received by, the class. As of January 29, 2025 no class members have objected, only twelve (12) class members opted-out,[1] and thousands of claims have been filed (although claims are still being reviewed for validity). Plaintiffs now respectfully submit that this Court should finally approve the settlement.

This case arises out of a security incident where the personal identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") of approximately 166,432 of Defendant Henry Schein, Inc.'s ("Defendant" or "Henry Schein") current and former employees was compromised, allegedly exposing Plaintiffs and Settlement Class Members to harm. Plaintiffs sued, alleging that Henry Schein violated its duty to protect their Private Information, and Defendant responded by moving to dismiss and denying liability. The Court denied Defendant's motion to dismiss the claims on which Plaintiffs chose to proceed and shortly thereafter, due in part to the risks that existed with continued litigation, the parties agreed to discuss early resolution.

Only after two mediations with Bruce Friedman, Esq., of JAMS, a mediator with significant experience in data breach class actions, did the parties reach the material terms of the Settlement, which they then diligently negotiated, preparing a Settlement Agreement that is fair, adequate, and reasonable. *See* Dkt. 29-4 ("Settlement Agreement" or "S.A."). Under the Settlement

---

[1] Settlement Class Representative Randi Grifka has withdrawn her opt out (*see* Dkt. 34) consistent with the agreement in the attached Addendum to Settlement Agreement and Release entered into by Ms. Grifka and Henry Schein. *See* **Exhibit A**. Because Ms. Grifka has withdrawn her opt out, Henry Schein has withdrawn its letter motion asking that the opt out be stricken. *See* Dkt. 36.

Agreement, Defendant will establish a $2,900,000.00 non-reversionary Settlement Fund that secures significant benefits for the Settlement Class, including: (1) payments up to $4,000.00 for unreimbursed and documented economic losses incurred as a result of the Data Incident, such as significant losses associated with identity theft or fraud; and (2) Cash Fund Payments estimated at $50, to be distributed *pro rata* based on the net amount in the Settlement Fund after payment of all approved claims for Out-of-Pocket Losses, Notice and Administrative Expenses, Taxes and Tax-Related Expenses, any award of attorneys' fees, litigation expenses, Service Awards. Moreover, Defendant confirmed it has made significant information security improvements since the Data Incident, which were paid for separate and apart from the Settlement Fund. Settlement Agreement ("SA") ¶ 68. These are valuable benefits to Class Members that directly address any harm they suffered as a result of the data breach. The Class has reacted positively to this settlement, with no Class Members objecting, and only 13 opting out. As a result, the Settlement satisfies Rule 23(e) and should receive final approval.

## II.    THE SETTLEMENT

The Settlement's details are contained in the Settlement Agreement the Parties executed on September 13, 2024. Dkt. 29-4 ("SA"). The Settlement Agreement provides  excellent benefits for the Settlement Class. The $2,900,000 Settlement Fund created under the Agreement will cover monetary benefits to Settlement Class Members who submit Valid Claims, costs of notice and claims administration, attorneys' fees and costs, and service awards to Plaintiffs. *Id*.

Specifically, the Settlement provides the following benefits to the Settlement Class:

### 1. Compensation for Unreimbursed Economic Losses

Up to $4,000.00 is available for each Class Member who submits a timely and valid claim with supporting documentation for unreimbursed ordinary and/or extraordinary economic losses

2

caused by the Data Incident. SA ¶ 59(i). Examples of losses for which Class Members may claim reimbursement include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id.* at ¶ 36, 59.

### 2. Cash Compensation

*Pro rata* Cash Fund Payments, estimated at $50, will be available for all Class Members who submit a valid and timely claim. *Id.* at ¶ 59(ii). No documentation is required to claim this benefit.

### 3. Additional Security Measures

Henry Schein has confirmed it has made significant information security improvements since the Data Incident. *Id.* at ¶ 68. Because Henry Schein paid and/or is paying for these improvements separate and apart from the Settlement Fund, those improvements will not reduce any monetary relief afforded to the Class. *Id.* These improvements are designed to safeguard the Private Information Henry Schein still possesses, including any data belonging to Class Members.

### 4. Additional Settlement Benefits

The cost to administer the Settlement, including the Settlement Administrator's (i.e. Kroll Settlement Administration or "Kroll") costs to notify the Class and process claims shall be paid out of the Settlement Fund. *Id.* at ¶57.

The Settlement Agreement calls for a reasonable service award to Plaintiffs in the amount of $5,000 to each Plaintiff. *Id.* ¶ 88. The Service Award is meant to compensate Plaintiffs for their

efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation throughout settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions.

After agreeing to the terms of the settlement on behalf of the Class, counsel for Plaintiffs negotiated their fees and costs in the amount of one third of the Settlement Fund ($966,570) for payment of attorneys' fees, and reimbursement of reasonable litigation expenses of $16,197.74. *Id.* ¶ 87. Class Counsel submitted their Motion for Service Award Payments and Fee Award and Costs on December 2, 2024 (Dkt. 31, 32, 33), prior to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement, and no Class Members objected to the requested Fees or Service Awards,

The Settlement Agreement provides immediate and guaranteed benefits to the Settlement Class, thus, the Court should certify the Settlement Class and approve the settlement under Rule 23 so the parties may deliver those benefits.

## III.    BACKGROUND

### 1.    Defendants' Data Breach and Plaintiffs' Claims

Henry Schein is an international distributor of health care products and services based in Melville, New York. Dkt. 10 (Amended Complaint or "AC") ¶ 2. As part of running its business, Henry Schein collects and maintains Private Information from its current and former customers, employees, and employees' dependents, *id*. ¶ 3, which may include names, addresses, phone numbers, email addresses, photographs, dates of birth, demographic information, background information, government-issued identification numbers, Social Security numbers, driver's license numbers, state identification numbers, passport numbers, financial information, bank account

information, credit card numbers, loan information, medical history, medical treatment, insurance information, employment information, and/or IP addresses. *Id*. ¶¶ 21, 50. Plaintiffs allege that Henry Schein promised to protect this Private Information, stating that it is "committed to protecting personal information that our employees, customers, prospects, suppliers, and vendors have entrusted to us." *Id*. ¶ 18. Plaintiffs and Class Members allege they relied on these promises, including when Plaintiffs agreed to work for Defendant, but Defendant failed to implement the safeguards and systems needed to fulfill those promises. *Id*. ¶¶ 5, 16, 29, 31 46, 67, 183. As a result, Plaintiffs allege that Defendant's misconduct led to the Data Incident. Defendant vigorously denies that these allegations accurately describe their policies or conduct with respect to the security of Plaintiffs' and the proposed Class's private and/or personally identifying information.

On or about September 27, 2023, a threat actor gained initial access to Henry Schein's network, and subsequently accessed the private and/or personally identifying information of over 166,000 individuals. *Id*. ¶¶ 3-5, 20-24, 27. After detecting and investigating the potential impact of the Data Incident, on November 17, 2023, Henry Schein began directly notifying individuals, including Class Members. *Id*. ¶ 25.

### 2. Procedural History

Following Defendant's notification of the Data Incident and an investigation by Class Counsel, Plaintiff Lucisbel Cruz-Bermudez filed this class action lawsuit against Defendant on January 18, 2024. Dkt. 1. Plaintiff Cruz-Bermudez brought claims for: negligence, breach of implied contract, breach of fiduciary duty, unjust enrichment, violation of the New York Deceptive Trade Practices Act, and under the Declaratory Judgment Act. Plaintiff Helmut Becker was added as a named-Plaintiff in the Amended Complaint on February 16, 2024. Dkt. 10. On March 15, 2024, Henry Schein filed a letter requesting a pre-motion conference on a motion to dismiss

Plaintiffs' Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which the Court converted into Henry Schein's motion to dismiss on March 17, 2024. Dkt. 15. Plaintiffs filed a letter in opposition on March 22, 2024, in which they also withdrew their claims for breach of fiduciary duty and violation of the New York Deceptive Trade Practices Act. Dkt. 17. Following a hearing and argument, on April 8, 2024, this Court denied Defendant's motion to dismiss and ordered the Parties to file a revised case management plan. Dkt. 21.

### 3.   Arms'-length Negotiations & Preliminary Approval

Considering the risks of continued litigation and all other factors bearing on the merits, the Parties scheduled a mediation with Bruce Friedman, Esq. of JAMS, a mediator with significant experience in data breach class actions. Dkt. 29-1 ("MPA Decl."), ¶10. Ahead of mediation, Plaintiffs requested, and Defendant produced, informal discovery necessary to engage in meaningful settlement discussions, and the Parties drafted and shared detailed mediation statements analyzing their settlement positions. *Id.* ¶8. Following a full day mediation on June 3, 2024, the Parties reached an agreement on the principal terms of a class settlement, subject to final mutual agreement on all documentation and confirmation of the Class size. *Id.* ¶11. In the following weeks, Defendant determined through additional investigation that the potential class size was much larger than previously known. *Id.* ¶12. Accordingly, the Parties scheduled another mediation with Mr. Friedman on September 3, 2024 to renegotiate key terms of the Settlement. *Id.* This second mediation resulted in this Settlement. *Id.* ¶17. Plaintiffs then moved for preliminary approval.

On September 16, 2024, the Court preliminarily approved the parties' settlement as "fair, reasonable, and adequate." Dkt. 30. In so doing, it found that Plaintiffs' proposed Settlement Class

satisfied Fed. R. Civ. P. 23(a) and (b). Dkt. 30 ¶¶ 2-3. The Court further appointed Plaintiffs as the Settlement Class Representatives and appointed Settlement Class Counsel. *Id.* ¶¶4-5.

### 4.   Notice Program & Claims Activity

On September 30, 2024, Defendant provided Kroll with the contact information for 166,432 Class Members.  Decl. of Cecily G. Uhlfelder of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement, ¶ 8. After Kroll cleaned the contact information, removing duplicates and updating addresses, it sent Postcard Notice (*id*. Ex. A) via U.S. First Class Mail to 115,148 Class Members on October 16, 2024 and email notice to 12,817 Class Members on October 30, 2024. *Id*. ¶¶ 8-9. For Postcard Notices that were returned with a forwarding address, Kroll automatically remailed them. *Id.* ¶ 11. For those returned without a forwarding address, Kroll ran them through an advanced address search to obtain updated addresses. *Id.* ¶ 12. In addition to the direct notice via mail and email, Kroll implemented a state-of-the-art publication notice program that included online display ads, Google search ads, social media ads, and a press release, all of which directed Class Members to the Settlement Website. *Id.* ¶¶ 13-19.

The Settlement Website, www.henryscheinsettlement.com, went live on October 16, 2024, and contained information about the Settlement, including answers to Frequently Asked Questions as well as an online Claim Form. *Id.* ¶ 22. Additionally, Kroll established a toll-free telephone number and post office box. *Id.* ¶¶ 20-21.

The Claims Deadline was January 14, 2025. *Id.* ¶ 23. As of January 27, 2025,  8,969 claims have been submitted. *Id.* ¶ 23. These claims are still subject to audit and review. *Id.* The opt-out and objection deadline was December 16, 2024. *Id.* ¶ 26. Kroll received twelve (12) timely opt out requests and no objections. *Id.* ¶¶ 27-28.

### IV.   ARGUMENT

1. **The Court Should Approve the Settlement Under Rule 23 and the *Grinnell* Factors**

Courts encourage parties to settle class actions given their potential for costs, delays, complexity, and risks: "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.* (*In re Luxottica Group Litig.*), 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."). Data breach cases are some of the most risky, and is why courts favor settling these cases. *See, e.g., Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355, at *24 (S.D. Fla. July 8, 2023); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010).

Courts approve settlements under these principles in two steps. First, the "preliminary stage," which the parties completed when this Court granted preliminary approval in September. *Chang v. Philips Bryant Park LLC*, No. 17 Civ. 8816 (LTS) (SLC), 2019 U.S. Dist. LEXIS 185297, 2019 WL 8105999, at *7 (S.D.N.Y. Oct. 23, 2019). Second, after the parties notify the class, the Court must decide whether to "finally" approve the settlement under precedent and Rule 23.

The Second Circuit has developed factors governing whether to approve settlements, and this settlement meets them. Those factors are: (i) the case's complexity and "likely duration;" (ii) how the class has reacted to settlement; (iii) the case's litigation stage; (iv) the case's risks in proving liability; (v) the risks in proving damages; (vi) the risks in maintaining a case through trial;

(vii) defendant's ability to pay a "greater judgment;" (viii) the "range of reasonableness" for the case. *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. June 10, 2009) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). Altogether, those factors determine whether the settlement results from "serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies." *See Cohen*, 262 F.R.D. at 157.

Rule 23 lists its own criteria for approving settlements, but Rule 23's factors do not supplant the *Grinnell* factors. *Soler v. Fresh Direct, LLC*, 2023 U.S. Dist. LEXIS 42647, at *8 (S.D.N.Y. Mar. 14, 2023) ("This [Rule 23] inquiry overlaps with the *Grinnell* factors"). Instead, Rule 23's criteria focuses "the court and the lawyers on the core concerns of procedure and substance" under four factors: (i) "adequacy of representation;" (ii) whether there were "arm's length" negotiations; (iii) "adequacy of relief;" and (iv) equity between class members. *Id.*; *see also* Rule 23(e). Specifically, within the third factor, "adequacy of relief," the Court considers the case's risks, how the parties propose distributing relief, attorney's fees terms, and any other agreements impacting settlement. *Id*.

Because the *Grinnell* and Rule 23 (e) factors "overlap," plaintiffs condense their analysis below to reflect that principle. *Soler*, 2023 U.S. Dist. LEXIS 42647, at *8 (applying a condensed analysis); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805, at *28 (S.D.N.Y. June 8, 2022) (same).

### A.  Plaintiffs and counsel represented the class "adequately"

The Settlement satisfies Rule 23 (e)(2)(A) because Plaintiffs and their counsel represented the class "adequately" when negotiating it. Meeting this factor entails determining whether Plaintiffs' interests are "antagonistic" to class members' interests and whether Plaintiffs' counsel

is qualified and experienced in the litigation. *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). Plaintiffs have satisfied this inquiry.

There is no antagonism between Plaintiffs, their counsel, and the Settlement Class because Plaintiffs are accepting the same relief on the same terms as all other Settlement Class Members. Although Plaintiffs request a service award, such an award is not guaranteed, and the Class will receive the settlement's benefits no matter how the Court rules on Plaintiffs' request. Plaintiffs helped their attorneys investigate the breach, supplied the facts supporting their complaint, provided information in advance of mediation, and were available throughout the mediation and settlement process to answer questions and represent the interests of the Settlement Class. Dkt. 33, ¶ 23("Joint Fee Decl."). What's more, Plaintiffs and their counsel withheld negotiating attorneys' fees and costs and a service award until after the parties agreed on the settlement's core terms applicable to the class, thus removing any conflict that may result from concurrent negotiations. MPA Decl. ¶ 14.

Plaintiffs' counsel also has the experience needed to represent the Settlement Class and secure relief. Dkts. 29-5, 29-6 (Class Counsels' firm resumes). Counsel has represented data breach victims across the country and reached settlements that courts routinely approve. *Id.* And that experience served Plaintiffs and the class considering the results achieved in the settlement. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009), *aff'd*, *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (noting "extensive" experience of counsel in granting final approval); *see also Shapiro v. JPMorgan Chase & Co*., No. 11 Civ. 8331-CM-MHD, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair). At all times, Class Counsel was

fully informed about the facts, risks, and challenges of this action and had a sufficient basis on which to negotiate a very significant settlement. As a result, the Court should find Plaintiffs have satisfied this factor.

## B.   **The Settlement was negotiated at arms' length**

To achieve the "fairness" that Rule 23 (e)(2)(B) demands, plaintiffs must show their proposal was negotiated at "arm's length."

As detailed above, Plaintiffs' counsel litigates privacy cases, including data breaches, in state and federal actions, meaning they understand how this settlement compares to other data breach settlements. Fee Decl. ¶¶ 20-27. This allowed Plaintiffs' counsel to evaluate the value of this case, including the risks of proceeding in litigation compared to the relief that could be achieved. Armed with this knowledge, and with the assistance of a neutral third party mediator, Plaintiffs' counsel negotiated the Settlement terms with opposing counsel, who are also experienced and capable counsel knowledgeable in complex class litigation. Fee Decl., ¶¶ 9-12. In fact, this case was only resolved after two mediations and significant negotiations about the terms of the Settlement. *Id.*

Although the parties settled this matter before formal discovery started, that is no bar to approving their agreement's terms as Plaintiffs' counsel insisted on, and received, pre-mediation discovery. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007) ("although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614, *6 (S.D.N.Y. June 7, 2011) (counsel had "completed enough investigation to agree on a reasonable settlement" even without discovery). Indeed, the "pertinent question" is not whether Plaintiffs conducted Rule 26 discovery, but "whether counsel

had an adequate appreciation of the merits of the case before negotiating." *Willix v. Healthfirst, Inc.*, No. 07–cv–1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011). Because Plaintiffs gathered the facts needed before mediating, they understood the landscape affecting settlement just as if they had conducted discovery. Moreover, early settlement where, as here, the Parties are adequately informed to negotiate is to be commended. *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours in legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).

For these reasons, the court should find Plaintiffs have satisfied this factor and the third *Grinnell* factor.

### C. The Settlement's relief is "adequate" considering this case's complexity and risks and the relief this settlement achieves

In *Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023), the Second Circuit noted that, when analyzing the adequacy of class relief, the court should "review both the terms of the settlement and any fee award encompassed in a settlement agreement in tandem." 79 F.4th at 244 (cleaned up; citation omitted). Considering the terms of the settlement, the risks of litigation, and the reasonable fee award requested in light of these factors, the Settlement is "adequate."

First, as detailed above, the Settlement provides excellent and timely relief, including reimbursement for out-of-pocket costs and cash payments for Class Members who have not yet suffered out-of-pocket losses. Without settling, this case faced risks that would have delayed or doomed Plaintiffs' chances at recovery. Almost "all class actions involve a high level of risk, expense, and complexity." *Desue*, 2023 U.S. Dist. LEXIS 117355, at *24. And this is not only a "complex" case—"it lies within an especially risky field of litigation: data breach." *Id*. This is why

courts favor settling breach cases, as "proceeding through the litigation process . . . is unlikely to produce the plaintiffs' desired results." *In re Countrywide*, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200, at *6; *see, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *13 (N.D. Ohio Aug. 12, 2019) ("[D]ata breach litigation is complex and largely undeveloped."); *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, at *21 (E.D. Pa. Sep. 23, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare.").

In fact, data breach cases do not always clear the motion-to-dismiss stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.,* No. 08 Civ. 6060 (RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting dismissed data breach cases at the Rule 12(b)(6) stage). And when they do, courts will still sometimes dismiss them at summary judgment or refuse to certify them. *See In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify data breach class action); *Stollenwerk v. TriWest Healthcare All.*, No. CV–03–0185–PHX–SRB, Slip Op. at 5–6 (D. Ariz. June 10, 2008) (same); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (same). Although Plaintiffs believe they would have overcome these hurdles given the facts in issue, they presented risks that justified settling at this stage.

Moreover, to justify taking this case to trial, Plaintiffs would need to clear these hurdles and achieve a better result than what has been reached through settlement, which there is no evidence to believe a trial would provide. The Court and parties cannot estimate the upside in litigating this case through to trial because breach victims have yet to try a case, so there is no verdict to measure their result against. Ability to "withstand a greater judgment" is not a factor to defeat settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9

("ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."). Nor is this case the right candidate for trial given the relief the Agreement delivers. Again, the Agreement achieves what Plaintiffs wanted in their complaint—compensation for their and the Settlement Class's losses. There is no reason to risk losing recovery entirely by refusing to settle on those terms.

Last, Plaintiffs timely petitioned the Court to approve their attorneys' fees, costs, and award requests (Dkts. 31-33), which are justified and reasonable for the reasons described therein, and all of which fall within what courts in this district have approved. *See Warren v. Xerox Corp.*, No. 01-CV-2909 (JG), 2008 U.S. Dist. LEXIS 73951, at *22 (E.D.N.Y. Sep. 19, 2008) (awarding class counsel attorneys' fees and expenses at 33.33 percent of the total settlement value, and finding such a sum "comparable to sums allowed in other cases"); *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("[i]n contingent litigation, lodestar multiples of over 4 are routinely awarded by courts") (citation omitted) *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six.") (citations omitted)); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit" (citation omitted)); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) (granting an award of $5,000 to $7,500 to Plaintiffs); *Dornberger v. Metropolitan Life Ins.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting in class actions representative plaintiff awards from $2,500 to $85,000 are commonly accepted).

As a result, the Court should find this factor and the first, fourth, fifth, and sixth *Grinnell* factors support approval.

**D.  The Settlement treats class members equitably and is within the "range of reasonableness"**

The results the Settlement secures is in line with those achieved in other data breach settlements. Indeed, this Settlement provides all Class Members with the opportunity to claim a Cash Fund Payment without needing to prove any monetary losses. SA ¶ 59(i); *see In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805, at *29-30 (S.D.N.Y. June 8, 2022) ("Comparable data-breach cases have provided lower settlement payments to class members, with relief that includes a payment of $10 or merchant coupons"); *In re Canon United States Data Breach Litig.*, No. 20-CV-6239-AMD-SJB, 2023 U.S. Dist. LEXIS 206513, at *14 (E.D.N.Y. Nov. 15, 2023) (reimbursing out-of-pocket losses and offering credit monitoring, but no other cash payments); *Brady v. Due N. Holdings, LLC*, No. 17-cv-1313, Doc. No. 59, at 4 & Doc. No. 65, at 2 (S.D. Ind. Oct. 16, 2018) (same); *Torretto v. Donnelley Fin. Sols., Inc.*, No. 1:20-cv-02667-GHW, 2023 U.S. Dist. LEXIS 5440, at *5 (S.D.N.Y. Jan. 5, 2023) (same); *Reynolds v. Marymount Manhattan Coll.*, No. 1:22-CV-06846-LGS, 2023 U.S. Dist. LEXIS 191993, at *6 (S.D.N.Y. Oct. 23, 2023) (same). This is not to mention that all Class Members may also claim compensation for out-of-pocket losses and benefit from Defendant's cybersecurity changes. S.A. ¶ 68.

**E.  The class's reaction to the settlement**

It is "well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); *Grinnell*, 495 F.2d at 462-63. The Class's reaction to the Settlement has been resoundingly positive. There have been only 13 opt-outs and no objections, and 8,969 claims have been filed. Kroll Decl. ¶¶ 23-28. There is no evidence the Settlement Class disapproves of the Settlement in any way, and as a result, "the reaction of the class to the settlement

also weighs in favor of final approval of the Settlement Agreement." *In re Nano-X Sec. Litig.,* No. 21-CV-5517 (RPK) (PK), 2024 U.S. Dist. LEXIS 71340, at *10 (E.D.N.Y. Apr. 17, 2024).

### 2. The Court Should Certify the Settlement Class for Settlement Purposes

Certifying a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 658 (S.D.N.Y. 2015) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995)). The Court certified the Settlement Class for settlement purposes in its preliminary approval order and the reasons justifying the order have not changed. *See* Dkt. 30. For that reason, the Court can rely on its order without analyzing Rule 23's factors again. *See In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally approving settlement where there "have been no material changes to alter the proprietary of [the court's] findings" at the preliminary approval stage).

In granting preliminary approval, the Court certified the Settlement Class for purposes of settlement for four reasons. First, it found the Settlement Class was "numerous" because there are approximately 166,432 Class Members. Dkt. 30, ¶ 3. Second, the Court found "there are common questions of law and fact including whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information potentially implicated in the Data Incident." Dkt. 30, ¶ 3. Third, the Court found typicality was satisfied because the Class Representatives are members of the Class and "allege that they have been damaged by the same conduct as the other members of the Class." *Id.* Fourth, the Court found that the Class Representatives and Class Counsel were adequate. *Id.* Fifth, the Court determined that common questions of law and fact predominate over any individualized questions. *Id.* And

sixth, the Court determined that a class action for the purposes of effectuating the Settlement is "superior to other available methods for the fair and efficient adjudication of this Litigation." *Id.* (citing Fed. R. Civ. P. 23(a)-(b)).

The Court should make these same findings here and certify the Settlement Class for purposes of final approval of the Settlement.

### 3.  The Court Should Find the Notice Program Satisfied Due Process

The Court should approve the notice program because it satisfied due process and provided the best practicable notice to the Settlement Class under the circumstances. Settlement Class Members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23 (c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. Fed. R. Civ. P. 23(c)(2)(B).

As discussed above, Kroll sent direct notice via U.S. First Class Mail to the majority of the Settlement Class and also implemented a wide-ranging publication notice program. Additionally, the Settlement Website and telephone line maintained by Kroll provided the Settlement Class with ample opportunity to obtain information about the Settlement and file a claim. As a result, the

notice program here satisfies due process. It was the "best notice that [was] practicable under the circumstances" and succeeded at what it aimed to do. Fed. R. Civ. P. 23(c).

## V.  CONCLUSION

For the reasons above, the Court should finally approve the parties' settlement, certify the Settlement Class, and enter the proposed final approval order.

Dated: January 31, 2025                  By: */s/ Raina C. Borrelli*
                                        Raina C. Borrelli (*pro hac vice*)
                                        STRAUSS BORRELLI PLLC
                                        One Magnificent Mile
                                        980 N. Michigan Avenue, Suite 1610
                                        Chicago IL, 60611
                                        Telephone: (872) 263-1100
                                        Facsimile: (872) 263-1109
                                        raina@straussborrelli.com

                                        Gary M. Klinger (pro hac vice)
                                        MILBERG COLEMAN BRYSON
                                        PHILLIPS GROSSMAN PLLC
                                        227 W. Monroe Street, Suite 2100
                                        Chicago, IL 60606
                                        Telephone: (866) 252-0878
                                        gklinger@milberg.com

                                        *Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that on January 31, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 31st day of January, 2025.

STRAUSS BORRELLI PLLC

By: */s/ Raina C. Borrelli*
Raina Borrelli
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

19